UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DOMINIC'S RESTAURANT OF DAYTON,
INC., et al.,

                Plaintiffs,

-v-

CHRISTIE L. MANTIA, et al.,

                Defendants.

Case No. 3:09-cv-131

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING DEFAULT JUDGMENT AGAINST
POWERS, LEE AND CHRISTIE MANTIA**

---

On January 12, 2010, the Court gave all of the Defendants in this matter until not later than February 15, 2010, to show cause as to why default judgment should not be entered against them for failure to follow this Court's orders. Specifically and not exclusively, none of the Defendants complied with the mandatory disclosure requirements of Fed. R. Civ. P. 26(a)(1), participated in the mandatory conference preceding the Court's Preliminary Pretrial Conference, identified lay and/or expert witnesses, provided any discovery or provided Plaintiffs with copies of the records from which a determination of the profits from the Restaurant may be made.[1]

Defendants Christie Mantia and Harry Lee did not respond to the Show Cause Order. On February 15, 2010, Defendant Reece Powers III ("Powers") filed his response to the Show Cause Order. (Doc. #108.) Finally, there is evidence that Defendant Dominic's Restaurant, Inc. no longer exists as a corporate entity in the State of Ohio so this Defendant will no longer be

---

[1] Some of these records were allegedly provided but were provided many months after they should have been.

considered.² The Show Cause Order is, therefore, ripe for decision.

The procedural background and case management history of this matter is fully set forth in the Show Cause Order (doc. #100) and will not be repeated herein. Further, there are two preliminary matters that need to be addressed before addressing the Show Cause Order and Powers' response thereto.

## PRELIMINARY MATTERS

The first preliminary matter to be addressed is a bankruptcy stay. On February 9, 2010, Powers filed a Suggestion of Bankruptcy in this matter. (Doc. #105.) Attached was a copy of a bankruptcy petition filed by Powers and his wife Nancy Ann pursuant to Chapter 13 of the Bankruptcy Code. This petition is dated February 8, 2010, and was docketed in the United States Bankruptcy Court for the Southern District of Ohio on February 8, 2010, Case No. 1:10-bk-10703.

As a general rule, the filing of a bankruptcy petition operates as a stay of, among other things, the commencement or continuation of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the bankruptcy proceeding or to recover a claim against the debtor that arose before the commencement of the bankruptcy proceeding. *See In re Wade*, 948 F.2d 1122, 1123 (9th Cir. 1991). However, there are statutory exemptions from the automatic bankruptcy stay protection and there are non-statutory exceptions to application of the automatic bankruptcy stay protection.

---

²The Court has heard testimony that the restaurant at issue in this matter is now being operated by Shirley's Village Inn which is an Ohio limited liability company with Defendant Reece Powers III as its only member.

This matter is a judicial proceeding against Powers, who is now a debtor in the eye of the Bankruptcy Code. This judicial proceeding was commenced before Powers filed his bankruptcy petition, and Powers is now claiming that the automatic bankruptcy stay protection applies to this case.

The court in which the litigation claimed to be stayed is pending has jurisdiction to determine whether the pending proceeding is subject to the bankruptcy stay. *National Labor Relations Board v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986). Therefore, this Court has jurisdiction to determine whether the claim in this matter against Powers is stayed based upon the automatic bankruptcy stay protection.

One of the overriding purposes of the Bankruptcy Code is to provide debtors with breathing room from their creditors to increase the chances of a successful reorganization. *In re Northwest Airlines Corp.*, 349 B.R. 338, 380 (S.D.N.Y. 2006). Thus, the Bankruptcy Code provides for a stay of other proceedings under certain circumstances. The purpose of the bankruptcy stay protection included in the Bankruptcy Code is to shield the estate from direct action taken by creditors against a debtor's real or personal property,[3] and to prevent an uncontrolled scramble to liquidate the estate. *Larami Limited v. Yes! Entertainment Corp.*, 244 B.R. 56, 59 (D.N.J. 2000).

The automatic bankruptcy stay protection protects interests in a debtor's property. *Larami,* 244 B.R. at 60. Thus, the bankruptcy stay does not apply automatically to an act or

---

[3]Such property includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re Elder-Beerman Stores Corp.*, 195 B.R. 1019, 1023 (Bankr. S.D. Ohio 1996). The term "property of the estate" is to be interpreted quite broadly and includes all kind of property, including tangible or intangible property and causes of action. *Id.*

proceeding that does not affect the property of the debtor's estate. *In re Rook*, 102 B.R. 490, 492 (Bankr. E.D. Va. 1989), *aff'd* 929 F.2d 694 (4th Cir. 1991). Further, the automatic bankruptcy stay protection does not grant a debtor greater rights than those the debtor would receive outside of bankruptcy. *In re Synergy Development Corp.*, 140 B.R. 958, 959 (Bankr. S.D.N.Y. 1992). Finally, the automatic bankruptcy stay protection does not protect the tortious use of the debtor's property by the debtor. *See Seiko Epson Corp. v. Nu-Kote International, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999)(a bankruptcy stay of proceedings against the debtor did not free the debtor of contempt orders and injunctions regarding patent infringements upon which the contempt was based, all of which were entered before the debtor suggested bankruptcy, and none of which would deplete the assets of the debtor); *Larami*, 244 B.R. at 60(a lawsuit brought during bankruptcy proceedings to enjoin the production or sale of an allegedly infringing product is not subject to the automatic bankruptcy stay protection because is goes to the tortious use of property by the debtor).

     The key issue in this matter involving Powers is his infringement on Plaintiffs' service mark. A temporary restraining order was issued enjoining him from using Plaintiffs' service mark at a restaurant. He was then found in contempt of that restraining order and a second restraining order was issued closing the restaurant. Next, a Preliminary Injunction was issued that kept the restaurant closed unless Powers used a menu specified by the Court. He was found in contempt of this Preliminary Injunction and the restaurant was again closed unless Powers used a menu specified by the Court. A motion to again find Powers in contempt of this Court's orders is currently pending. Thus, as regard to Powers, this matter involves his use of the restaurant to commit a tort, specifically the tort of infringement on a service mark. Further,

application of the automatic stay would permit Powers to continue to commit this tort, a activity not protected by the Bankruptcy Code.

While an assessment of monetary damages against Powers may be prevented by application of the automatic bankruptcy stay, injunctive relief regarding the use of the property in the commission of a tort is not. Therefore, the automatic bankruptcy protection provided by the Bankruptcy Code will not be applied to Powers in this case so long as monetary damages are not awarded against Powers. Since the bankruptcy stay protection does not reach this matter, the Court need not and does not consider whether one of the statutory-exceptions to the automatic stay protection applies.

The second preliminary matter is a pending motion by the Plaintiffs to amend their Complaint to add Shirley's Village Inn as a party. (Doc. #110.) This motion, filed on February 16, 2010, is based upon testimony given by Powers on February 11, 2010, that the restaurant is being operated by Shirley's Village Inn, a limited liability company of which he is the only member. Further, Powers' Bankruptcy Petition lists him as the President of Shirley's Village Inn and lists his current income as coming from Shirley's Village Inn.

Powers opposes this motion arguing that good cause has not been shown to add Shirley's Village Inn at this point in the proceedings and that the automatic bankruptcy stay protection should be extended to Shirely's Village Inn. (Doc. #124.) The Plaintiffs have not replied but the reply deadline has not passed. However, since Powers is the President and the only member of Shirley's Village, any judgment against Powers would presumably have the same effect as being against Shirley's Village Inn. Thus, the Court sees no reason to decide the pending motion to amend before deciding on the default judgment.

## ANALYSIS

### Relevant Legal Provisions

Fed. R. Civ. P. 37(b)(2) specifically provides that a court may sanction a party who fails to obey a discovery order in a variety of ways including rendering a default judgment against the disobedient party. *See Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995); *Prestige Equipment Corp. v. Case Machinery Co.*, LLC, No. 5:08 CV 2163, 2009 WL 2232859 at *2 (N.D. Ohio July 22, 2009). Four factors are considered when deciding whether to enter default judgment. *Bass*, 71 F.3d at 241; *Prestige*, 2009 WL 2232859 at *2. The first factor is whether the failure to participate in discovery is due to wilfulness and not merely inability. *Id.* The second factor is whether the opposing party was prejudiced. *Id.* The third factor is whether the defaulted party was warned that failure to cooperate could lead to default judgment. *Id.* The final factor is whether less drastic sanctions were imposed or considered before entry of default. *Id.* Each factor will be considered seriatim.

### Wilfulness

The first factor to be considered is whether the failure to participate in discovery is due to wilfulness and not merely inability. A wilful failure to participate occurs when there is a conscious and intentional failure to comply. *Bass*, 71 F.3d at 241. Finally, the burden is on the party against whom default is sought to establish that a failure to comply with court orders is due to inability and not wilfulness. *Prestige Equipment*, 2009 WL 2232859 at *2.

Powers now offers three arguments as to why his failure to participate in discovery and follow the Court's discovery orders was not wilful. None of these arguments are persuasive.

Powers first argues that he was informed by his prior counsel that the Plaintiffs' Rule 26(a)(1) disclosures had provided a vague categorical list of possible witnesses without naming any specific names and he was informed by his prior counsel that his prior counsel intended to do the same. (Declaration of Reece Powers III ("Powers Decl.") ¶4 Feb. 15, 2010.) Powers asserts that he assumed that his prior counsel had done so.

The problem with this argument is that Powers has had four prior counsel, three of which are identified as unsecured creditors in his Bankruptcy Petition, and that he has represented himself for a period of time.[4] In addition to prior counsel, Powers currently has two attorneys in this case and a third attorney has entered an appearance for the limited purpose of arguing whether the automatic bankruptcy stay protection applies. It is difficult to lay responsibility on an unnamed prior counsel for failing to submit Rule 26(a)(1) disclosures when prior counsel was changed on a regular basis by Powers and when Powers obviously was adept at managing, in the form of changing, his counsel. Finally, any problem that he may have with the performance of any one of those counsel is between that counsel and Powers.

Powers' second argument as to why his failure to participate in discovery and follow the Court's discovery orders was not wilful is that he provided his former counsel on two occasions with financial statements showing the performance of the Restaurant since its opening. (Powers Decl. ¶ 5.) Powers says he assumed these financial statements were provided to Plaintiffs' counsel.

---

[4]Many times when a significant hearing that could be unfavorable to Powers was about to occur, Powers changed counsel. Also, the day before the latest contempt hearing, Powers filed a bankruptcy petition and brought his bankruptcy counsel to the contempt hearing to argue that the contempt hearing could not go forward.

There are at least three problems with this argument. The first is the same as set forth above. It is difficult to lay responsibility on an unnamed prior counsel when prior counsel was changed on a regular basis. The second problem is that providing the documents to prior counsel is not the same as agreeing that prior counsel could or would provide the documents to Plaintiffs' counsel. The third problem is that, even if this were an acceptable explanation, it would only explain a small part of the failures.

Power's third argument is that he was not aware of a requirement that he participate in a mandatory pretrial conference. (Powers Decl. ¶ 6.) However, this mandatory pretrial conference was to occur at a time when Powers was representing himself. If he elects to represent himself, he, of course, is responsible for following the law and the Court's orders during this time period.

In a final effort to avoid a wilfulness determination, Powers allegedly provided an updated financial statement showing financial results for May through December 2009 to Plaintiffs on January 12, 2010, and on February 10, 2010 he served Rule 26(a)(1) disclosures.

While the Court does not have evidence before it to determine the completeness of the documents recently provided, it does have evidence showing that they were provided significantly beyond the dates ordered by the Court and they do not satisfy all of the discovery requirements set forth in the Preliminary Pretrial Conference Order (doc. #80). The Rule 26(a)(1) disclosures were to have been provided prior to the Preliminary Pretrial Conference that was conducted on August 29, 2009. The discovery deadline was December 1, 2009. Lay witnesses were to have been identified by November 1, 2009, and expert witnesses by December 1, 2009. Powers and the other Defendants elected to do none of the above. Thus, the documents served by Powers in early 2010 are very late and incomplete and do not show that his earlier

non-compliance was not wilful.

Powers has not met his burden of showing that his non-compliance was not wilful. The remaining defendants have also not met their burden of showing that non-compliance was not wilful. This factor weighs in favor of granting default judgment against all of the Defendants..

### Prejudice To Opposing Party

The second factor to be considered is whether the opposing party was prejudiced by the failure to cooperate in discovery. In this case, the Plaintiffs' were and are severely prejudiced by the Defendants' failure to participate in discovery. The cut-off date for filing summary judgment motions was February 1, 2010. Without discovery, Plaintiffs' could not practically seek summary judgment. The trial date is September 27, 2010. Without discovery, even considering the limited discovery allegedly provided late by Powers, the Plaintiffs are severely prejudiced in preparing for trial. *See Prestige Equipment*, 2009 WL 2232859 at *3(failure to participate in discovery is prejudicial to a plaintiff's efforts to prosecute its case and achieve resolution of its claims); *Thomas v. Victoria's Secret Stores*, 141 F.R.D. 456, 458-59 (S.D. Ohio 1992)("where a party demonstrates bad faith by failing to meet dates set by the Court for compliance with discovery, despite being warned about possible sanctions, the Court does not abuse its discretion in finding that such 'callous disregard' of discovery orders justifies dismissal"). This factor weighs in favor of granting default judgment against all of the Defendants.

### Warning

The third factor is whether the party to be sanctioned was warned that failure to cooperate could lead to default judgment. The Sixth Circuit has determined that routine language

in a standard order warning counsel of possible sanctions for failure to comply with any of the provisions of the order is not necessarily sufficient prior notice yet judgment may be granted where there are numerous derelictions of duty. *Freeland v. Amigo*, 103 F.3d 1271, 1279 (6th Cir. 1997).

In this case, the Plaintiffs sought default judgment on December 1, 2009. Rather than granting default judgment at that time, the Court gave the Defendants more than thirty (30) days to show cause as to why default judgment should not be granted and warned them that default judgment would be granted if they did not show cause. Further, in this case, there are numerous instances of failure to follow this Court's orders. Finally, all of the Defendants have previous experience in this case with failure to follow injunction orders and the resulting contempt findings.

The Defendants in this matter had adequate warning and knowledge that failure to follow this Court's orders could result in sanctions. This factor weighs in favor of granting default judgment against all of the Defendants.

### Less Drastic Sanctions

The fourth factor to be considered is whether less drastic sanctions were imposed or considered before default judgment was ordered. In this case, other than the injunctive relief granted, less drastic sanctions were not imposed before default judgment was considered. However, the Defendants in this case were aware, via the injunctive relief and associated contempt findings, that there are sanctions for failure to follow Court orders, and the discovery failures were many and occurred over an extended period of time. This factor weighs in favor of granting default judgment against all of the Defendants.

**Conclusion**

Powers argues that courts are hesitant to levy sanctions so severe as default judgment or dismissal where the failure of a party to comply with discovery-related deadlines and orders is not directly the fault of the party. In support of this argument, Powers cites two cases, neither of which are persuasive.

In arguing against default judgment, Powers first cites *Patterson v. Grand Blanc Township*, 760 F.2d 686 (6th Cir. 1985). In *Patterson*, the Sixth Circuit upheld a $1,000 sanction against plaintiff's attorney but found that lack of compliance with all of the court's orders within five days does not establish a basis for final dismissal of the plaintiff's claim. *Id.* at 688. However, this case is distinguished from *Patterson* because in this case none of the Court's discovery orders were complied with and the non-compliance occurred over a period of five months.

Powers also cites the case of *Freeland v. Amigo* for the proposition that he should not be found in default for failure to comply with discovery orders. In *Freeland*, the Sixth Circuit determined that default judgment based upon the failure to follow discovery orders was too harsh. *Id.* at 1277. However, in *Freeland* the district court's pretrial order set a date for discovery cutoff and allowed the parties to waive this date by agreement. *Id.* There was a dispute as to whether this date was waived by and between the parties. *Id.* This case is distinguished from *Freeland* because in this case all of the dates in the pretrial order were firm, the pretrial order did not allow for waiver of the dates and Powers followed none of them. Thus, *Freeland* does not support Powers' argument.

All of the factors to be considered weigh in favor of default judgment against Powers,

Lee and Christie Mantia for failure to comply with this Court's orders. Powers, Lee and Christie Mantia have not shown that their failure to follow this Court's orders was due to inability and not wilfulness. The Plaintiffs are severely prejudiced by their failure, the Defendants were adequately warned and less drastic sanctions are not appropriate.

The relief sought includes injunctive relief and an award of damages in an amount that is not currently a sum certain. Therefore, beginning at 9:00 a.m. on May 20, 2010, in Courtroom #2 of the Dayton Federal Building, this Court will conduct a hearing to receive evidence as to the relief sought recognizing that this Court will not award monetary damages against Powers. The Court notes that it has already received evidence regarding contempt of the Preliminary Injunction.

**DONE** and **ORDERED** in Dayton, Ohio this Twenty-Fifth Day of March, 2010.

                                        **s/Thomas M. Rose**

                                        THOMAS M. ROSE
                                        UNITED STATES DISTRICT JUDGE

Copies furnished to:
    Counsel of Record
    Christie L. Mantia at her last known address of record