UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**DOMINIC'S RESTAURANT OF DAYTON, INC., et al.,**

        **Plaintiffs,**

-v-

**CHRISTIE L. MANTIA, et al.,**

        **Defendants.**

Case No. 3:09-cv-131

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING DEFAULT JUDGMENT; GRANTING IN PART AND DENYING IN PART DOMINIC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT (Doc. #152); ENTERING A PERMANENT INJUNCTION AND RETURNING BOND**

---

Defendants Reese Powers, III, Harry Lee, Christie L. Mantia and Shirley's Village Inn have already been determined by the Court to be in default. (Docs. #125, 149.) On November 7, 2012, this Court declined to award damages against these Defendants in an amount certain and set a hearing to determine damages. (Doc. #161.)

Also, the Court ordered Nancy Powers to respond to an allegation that Defendant Dominic's Restaurant, Inc. ("DRI") had again been activated and was being run exclusively by Nancy Powers. Based upon her response, the Court declined to enter default judgment against DRI since it was no longer an active corporation. (Doc. #161.)

A damages hearing was conducted on March 6, 2013. At this hearing, the Court heard testimony from Anne Mantia and Tim Wendler regarding damages and admitted sixteen (16) exhibits. Subsequently, Plaintiffs Dominic's Restaurant of Dayton, Inc., Dominic's Foods of Dayton, Inc. and Anne B. Mantia (collectively referred to hereinafter as "Dominic's"), submitted

a post-hearing brief. (Doc. #171.) None of the Defendants appeared at the Hearing, and none of the Defendants have filed a post-hearing brief. This matter is, therefore, ripe for decision.

Dominic's First Amended Complaint identifies eight (8) claims. (Doc. #137.) Count I is for trademark infringement. Count II is for federal unfair competition, false designation of origin, passing off and false advertising. Count III is for federal trademark dilution. Count IV is for deceptive and unfair practices under Ohio law. Count V is for unfair competition under Ohio law. Count VI is for tortious interference with prospective/contractual business advantage and conspiracy to interfere with contractual business relations and to misappropriate Plaintiff's methods of operation. Count VII is for conversion and unjust enrichment, and Count VIII is for misappropriation of business property in violation of Ohio's Uniform Trade Secrets Act. All Counts of the First Amended Complaint are against all Defendants.

Dominic's now seeks damages totaling $5,166,860. (Doc. #171.) Dominic's also seeks attorneys' fees in the amount of $171,000. (Id.)

## RELEVANT LEGAL PROVISIONS

Fed. R. Civ. P. 55 provides that default judgment may be entered against a party in two (2) ways: (1) by the Clerk if Plaintiff's claim is for a sum certain or (2) by the court in all other cases. Here, as the Court has already determined, Plaintiffs' claim is not for a sum certain, so default judgment must be entered by the Court. The Court also notes that notice to the Defendants regarding default judgment is not required. *See Turner v. Whitehorn*, No. 98-6635, 1999 WL 1336074 at *2 (6th Cir. Dec. 21, 1999).

The parties seeking default judgment, Dominic's in this case, are not entitled to default judgment as a matter of right. *Hitachi Medical Systems America, Inc. v. Lubbock Open MRI,*

*Inc.*, No. 5:09CV847, 2010 WL 1655536 at *1 (N.D. Ohio Apr. 22, 2010). The Court is required to exercise judicial discretion when determining whether default judgment should be entered, and, if so, the amount. *Hitachi,* 2010 WL 1655536 at *1; *Thomson v. Wooster*, 114 U.S. 104 at 111 (1885).

When determining the amount of damages, the allegations in the complaint are taken as admitted. *Wooster*, 114 U.S. at 111. Finally, the Plaintiffs have the burden of proof of their damages. *Id.*

## ANALYSIS

All of the remaining Defendants have already been determined by the Court to be in default. Thus, default judgment is entered against them. What remains is to determine the damages, if any, including the amount of attorneys' fees to be awarded and whether to issue a permanent injunction.

### Damages

Dominic's damages may be analyzed by putting them into four categories: the cost of Anne Mantia's buyout of Christie Mantia; the cost of lost restaurant business; the cost of lost salad dressing sales and attorneys' fees. Each category will be addressed seriatim.

### The Cost of Anne Mantia's Buyout of Christie Mantia

Anne Mantia purchased Christie Mantia's shares in the original Dominic's. She paid Christie $285,000 at the time of closing and subsequently made monthly payments of $3,362.93 for sixty (60) months. Thus, Anne Mantia paid Christie Mantia a total of $486,775.80 for Christie Mantia's interest in Dominic's.

The Share Redemption Agreement, which was signed by both Anne Mantia and Christie

Mantia, was a contract that governed the sale of Christie Mantia's interest in Dominic's to Anne Mantia. The Share Redemption Agreement provided that Christie Mantia would not, in any manner use the name "Dominic's" or any associated logos in connection with any business of any kind following the closing of the transaction. The transaction closed on May 16, 2005, when the Share Redemption Agreement was signed.

On July 1, 2007, the original Dominic's restaurant closed. On March 17, 2009, Christie Mantia, along with Reece Powers, III and Harry Lee, announced the opening of a new restaurant in Miamisburg, Ohio that would be serving the original recipes from Dominic's.[1] Thus, by being part of the opening of a new restaurant serving original recipes from Dominic's, Christie Mantia breached the Share Redemption Agreement.

Not only did Christie Mantia violate the Share Redemption Agreement, she was party to the unlawful use of the Dominic's trademark and she misappropriated and converted Anne Mantia's business interests. Anne Mantia has shown that she was damaged by Christie Mantia in the amount that she paid Christie Mantia for Christie Mantia's share of Dominic's. This amount totals $486,775.80.

## The Cost of Lost Restaurant Business

Anne Mantia has identified three business opportunities involving opening restaurants using the Dominic's name. She testified that she put together a dossier to show prospective investors a little bit about the history of Dominic's and what she had to offer.

The first opportunity discussed by Anne Mantia is with the City of Miamisburg. Anne Mantia testified that she had been contacted by the Mayor of the City of Miamisburg about

---

[1] The new restaurant subsequently opened but was later closed by this Court.

putting a restaurant in Miamisburg. The letter from the Mayor regarding a meeting about a restaurant is dated October 23, 2007, and the letter indicates that the meeting was to be held on October 30, 2007. Anne Mantia testified that she did not put a restaurant in Miamisburg because she thought a location at the Center of Flight in Riverside, Ohio, would be better for her.

The second opportunity is with the City of Riverside in the planned Center of Flight. The dossier that Anne Mantia prepared appears to be targeted to the Riverside development. This opportunity did not materialize because, according to Anne Mantia, the question of ownership of the Dominic's name put a lot of people on guard about getting involved in the investment in a restaurant while the lawsuit was in progress.

The third opportunity is a franchise opportunity. One contact regarding franchise came in a letter dated November 6, 2007. A second contact came in a letter dated April 27, 2009. Anne Mantia testified that the franchise opportunity did not materialize because the lawsuit was still going on and the purported franchisee did not want to get involved until the litigation was settled. She also testified that, after the lawsuit was settled, the name had been damaged.

The announcement of the opening of the Dominic's restaurant in Miamisburg was made on March 17, 2009. This lawsuit was filed on April 3, 2009. On April 20, 2009, the Court issued its first Temporary Restraining Order finding that Anne Mantia had a likelihood of success on the merits of her claims against Christie Mantia, Harry Lee, Reece Powers, III, and Dominic's Restaurant, Inc. (Doc. #14.) These Defendants were restrained from using the Dominic's name, likeness or image. On May 14, 2009, this Court ordered the restaurant that had been opened by Christie Mantia, Harry Lee and Reece Powers, III closed. (Doc. #29.) On June 24, 2009, this Court issued a Preliminary Injunction that essentially mirrored the previously issued Temporary

Restraining Orders. (Doc. #65.)

Thus, potential business opportunities should have been aware of issues regarding the Dominic's name as early as March 17, 2009. The potential business opportunities should also have been aware of a resolution to those issues as early as April 20, 2009 and as late as June 24, 2009.

Although Anne Mantia testified that she was damaged by the loss of the business opportunities because of the opening of the Dominic's restaurant in Miamisburg, she has not convinced the Court that she was damaged thereby. First, the loss of the business opportunities is documented only by Anne Mantia's self-serving testimony. Second, she testified that she did not pursue the business opportunity in Miamisburg because the opportunity in Riverside was better for her. Third, she has offered no dates regarding the business opportunity in Riverside. Fourth, the record indicates that the franchising opportunity was still being pursued even during the lawsuit. Finally, any doubt regarding the Dominic's name was resolved quickly, by April 20, 2009, at the earliest and by June 24, 2009, at the latest.

The Court cannot determine with any reasonable degree of certainty that the opening of a restaurant in Miamisburg by Christie Mantia, Harry Lee and Reece Powers, III caused Anne Mantia to loose restaurant business. Therefore, she is not entitled to damages in this category.

### The Cost of Lost Salad Dressing Sales

After the original Dominic's was closed and sold and before this lawsuit, Anne Mantia began marketing pasta sauce and salad dressing. She began marketing these products eight or nine months before this lawsuit was filed. The products were marketed on a website and by personal visits to local grocery stores.

Anne Mantia documented sales of the pasta sauce and salad dressing in the amount of $36,066.95 for 2008. She documented sales in 2009 of $20,816.59, and she documented sales for the first half of 2010 in the amount of $7,104.14. During her testimony, she gave no reason specifically as to why these sales declined. Although, she testified generally that the question of ownership of the Dominic's name put a lot of people on guard about getting involved in the investment in a restaurant while the lawsuit was in progress.

The Court cannot determine with any reasonable degree of certainty that the opening of a restaurant in Miamisburg by Christie Mantia, Harry Lee and Reece Powers, III caused a decrease in sales of Anne Mantia's pasta sauce and salad dressing. Therefore, she is not entitled to damages in this category.

## Attorneys' Fees

Anne Mantia also seeks an award of $171,000 in legal fees associated with this trademark infringement action. She asserts that her counsel has expended 456 hours associated with this litigation and seeks an hourly rate based upon prior Orders. The total amount of attorneys' fees that she seeks is $171,000.

The Court has previously approved an hourly rate of $375 and has previously indicated that it uses the lodestar method for determining awards of attorneys' fees. Using the lodestar method, the Court must determine if the hours requested is a reasonable number of hours. The Court must also determine if an award of attorneys' fees is warranted.

The Court cannot determine whether 456 is a reasonable number of hours without some detail, as required by the lodestar method. Further, Dominic's has not provided the legal basis for an award of attorneys' fees. Therefore, if Dominic's seeks an award of attorneys' fees, it must

submit something from which the Court may determine a reasonable number of hours and the legal basis for an award of attorneys' fees.

Dominic's is given until not later than thirty (30) days following entry of this order to submit something from which the Court may determine whether it has expended a reasonable number of hours and from which the Court may determine a legal basis for an award of attorneys' fees. If Dominic's fails to do so, the Court will consider this matter closed.

## **Permanent Injunction**

Dominic's' Motion for Default Judgment also includes a request for the Court to enter a permanent injunction in accordance with the previous Preliminary Injunction. (Doc. #152.) A Preliminary Injunction has been issued by this Court. (Doc. #65.) Dominic's First Amended Complaint seeks a permanent injunction. Finally, all of the Defendants to Dominic's First Amended Complaint have been found to be in default, and none of them have argued against a permanent injunction. Therefore, a permanent injunction should issue.

## CONCLUSION

Dominic's Motion for Default Judgment (doc. #152) is GRANTED IN PART AND DENIED IN PART. Default Judgment is entered against Reese Powers, III, Harry Lee, Christie L. Mantia and Shirley's Village Inn.

Dominic's is awarded damages against Christie L. Mantia in the amount of $486,775.80, the amount that Anne Mantia paid Christie L. Mantia for Christie L Mantia's share of Dominic's. Also, Dominic's is given until not later than thirty (30) days following entry of this order to provide evidence of the reasonable number of hours spent on this matter and the legal basis for an award of attorneys' fees.

A Permanent Injunction[2] is entered as follows:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Defendants Shirley's Village Inn, LLC; Harry Lee; Reece Powers, III; Christie L. Mantia, and their agents, servants, employees, assigns, representatives and successors and all persons in active concert or participation with them are hereby ordered:

1. To refrain from advertising, marketing, promotion, selling, shipping or distributing, without Dominic's consent, any product utilizing the Dominic's name, likeness, or image or any name, likeness or image in any trade dress, trade mark or service mark, confusingly similar thereto; and

2. To refrain from making any commercial use of the Dominic's marks or any marks confusingly similar thereto; and

3. To refrain from falsely designating the origin of or infringing upon Dominic's marks by the use of the Dominic's name, image, likeness or logos including any uttering or writing of the word "Dominic's"; and

4. To immediately remove all graphics controlled by the Defendants that depict the name, likeness, or image of Dominic's marks or marks that are confusingly similar to the Dominic's marks; and

Any bond previously posted by Dominic's in this matter and currently held by the Court shall be returned to Dominic's.

---

[2]The previously issued Preliminary Injunction is modified to include Christie L. Mantia and Shirley's Village Inn, LLC. Christie L. Mantia was already restrained by the first Temporary Restraining Order. Shirley' Village Inn was added as a Defendant in Dominic's First Amended Complaint and has been found in default. Dominic's Restaurant, Inc. is not included in the Permanent Injunction because there is evidence that it no longer exists.

**DONE** and **ORDERED** in Dayton, Ohio this Eleventh Day of April, 2013.

                                            **s/Thomas M. Rose**

                                            THOMAS M. ROSE
                                   UNITED STATES DISTRICT JUDGE

Copies furnished to:
    Counsel of Record
    Christie L. Mantia at her last address of record
    Reese Powers, III, at his last address of record
    Harry Lee at his last address of record
    Shirley's Village Inn